No. 10,512.

KUNZMANN v. PETTEYS.

No. 10,513.

LAMBORN v. PETTEYS.

Decided December 3, 1923. Rehearing denied January 7, 1924.

Actions to compel the repurchase of corporate stock. Judgment of dismissal.

*Reversed.*

1. SALES—*Property Not Owned by Vendor.* Public policy does not prevent one from making a valid agreement to sell or dispose of property which he does not own.

2. PLEADING—*Complaint—Contract.* Complaint in an action to compel repurchase of corporate stock, held to allege a valid contract between the parties.

3. CONTRACT—*Construction—Statute of Frauds.* Where a promoter entered into an agreement with plaintiff for the sale to him of capital stock in a corporation to be thereafter formed, orally promising to repurchase the stock if the purchaser so requested, it is held that this agreement to repurchase was a part of the one and entire contract, and not within the statute of frauds.

4. SALES—*Corporate Stock—Ownership.* While a promoter who agrees to sell stock in a corporation may not own it at the time of making the contract of sale, if he thereafter delivers and receives payment for the stock, he will, in law, be deemed to be the owner.

5. FRAUDS—*Statute—Indemnity Contract.* A contract in the nature of one of indemnity, although oral, is not within the statute of frauds, which is restricted to the sale of goods.

6. *Agent—Liability.* A promoter of a corporation is individually liable to purchasers of the stock for any wrongs or frauds that he may perpetrate upon them in selling the stock, even if he did not at the time own it.

,7.  EVIDENCE—*Corporate Stock—Ownership.*  The fact that the pur-
chase price of capital stock was paid to and accepted by a
promoter of a corporation, it not appearing that the considera-
tion ever passed to the corporation, is evidence indicating own-
ership.

*Error to the District Court of Morgan County, Hon. L. C.
Stephenson, Judge.*

Mr. WALTER S. COEN, Mr. WILLIAM B. PAYNTER, Mr.
OMER T. MALLORY, for plaintiffs in error.

Mr. ALLEN C. PHELPS, Mr. LEONARD E. ANDERSON, for
defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the
court.

BY consent of the parties, causes Nos. 10,512 and 10,513,
in which the defendant is the same, and the plaintiffs are
different, were consolidated for hearing below and also
here.  The one opinion is applicable to both, and the de-
cision in each case is the same.

The sole question for decision is one of law, raised by the
general demurrer to the amended complaint, which the
court sustained and dismissed the action.  The plaintiff
charged in his pleading that the defendant Petteys, at the
time cashier and one of the principal stockholders of the
Weldon Valley State Bank, was engaged in the promotion
and organization of a corporation to conduct a grain and
elevator business in the town of Weldona; that defendant
solicited the plaintiff to subscribe for stock in the proposed
corporation, which plaintiff declined at first to do because
he was engaged in farming and not financially in a position
to do so, and thereupon the defendant orally promised
plaintiff, if he would come into the proposed company and
purchase $2,000 of its capital stock, and help in selling
stock of the company to other persons, the defendant would
lend him money from the bank with which to purchase the

stock, and if plaintiff at any time thereafter became dissatisfied or desired to dispose of the stock and get his money back, the defendant would take it off his hands and pay him the amount which the plaintiff had paid for the same; that in consideration for this parol agreement with the defendant, plaintiff purchased of defendant, and received later the corporation's certificate for 20 shares of the capital stock and paid defendant therefor the sum of $2,000 in money, which he obtained as a loan from the bank through the intervention of the defendant, and plaintiff also assisted in selling stock in the proposed corporation to other persons, in accordance with the oral agreement. Thereafter plaintiff, being in need of money, requested the defendant to repurchase the 20 shares of stock at the price paid for the same in accordance with the terms of the agreement between them, but the defendant failed and refused to do so. The plaintiff brings into court, and tenders, the certificate of stock, duly endorsed, to be delivered to the defendant upon his compliance with the terms of the oral agreement, and prays for judgment for $2,000 with interest. On defendant's motion the court struck certain parts of the complaint on the ground of immateriality, and, to what was left of it, sustained the defendant's demurrer, and dismissed the action.

Plaintiff's theory is threefold: (1) That the provision of the contract for the repurchase of the stock by the defendant is an essential and inseparable part of the original and only contract between the parties to the suit, and not an independent or collateral contract of sale between defendant and the corporation. Therefore, as the plaintiff has wholly performed on his part, the contract is not within, or is taken out of, the statute of frauds that makes invalid a contract for the sale of goods, etc., unless the same is in writing or a memorandum of such alleged contract is in writing and subscribed by the party to be charged therewith. (2) If such provision constitutes an independent or collateral contract, it is, nevertheless, in the nature of a contract of indemnity, and not a contract for the sale of

goods, etc., and, therefore, not within the statute of frauds. (3) In any event, the defendant is estopped to plead the statute, having induced the plaintiff to change his position to his disadvantage by making the oral promise. The defendant takes issue with the plaintiff as to each of these three propositions.

1.  The defendant concedes that an owner of goods, which he says includes corporate stock, may sell his own goods, payment and delivery being made, and may orally agree to repurchase them upon the demand of the buyer, and that a contract for such sale and repurchase is an entire contract, and thereby the promise of repurchase is taken out of the statute of frauds by such payment and delivery. He says, however, that the rule is otherwise where one, not the owner of stock, orally agrees to repurchase the same. His contention is that the line of cases which hold contracts of this nature without the purview of this statute, are those only where the promisor actually owns the stock at the time of the contract and did, at the same time and as a part of the same agreement, contract to repurchase it; but where the promisor does not own the stock he could not orally make a binding contract to repurchase that which he never owned, and, if he assumed to do so, his agreement would be in the nature of a separate and independent contract, thus making two contracts; the first being completed when the contract for the stock is subscribed, paid for and delivered, and the second being a separate agreement between different contracting parties and wholly within the statute of frauds when orally made.

It will be observed that this contention of the defendant assumes that the stock, which the plaintiff agreed to buy, and the defendant to sell, was not owned by the defendant, but was stock of a corporation thereafter to be formed, which fact alone brings the case within the statute of frauds. At the time this contract was made the stock itself was not in existence. The issuing corporation was not then formed. The defendant was its promotor. In the nature of things he could not be, and was not, the agent

of the corporation not then in existence. The contract in question was not a contract between the plaintiff and a corporation, through its duly appointed or recognized agent, but it was a contract between the plaintiff and the defendant, two natural persons. It is true that this contract might, upon a contingency, by ratification or approval on the part of the corporation after its organization, become its obligation. There is no allegation in the complaint that the defendant's contract of sale was ever brought to the attention of the corporation or its officers, or approved or ratified by it. So far as concerns this case and the rights of the parties here, the oral agreement was between two parties who were competent at the time to make it. If the defendant saw fit to agree to sell to the plaintiff property which at the time he did not own, this was a valid contract. It might be enforced by the plaintiff against the defendant when the latter acquired the property. There is no allegation in the complaint that the plaintiff made any formal subscription for this stock. In the absence of some averment to the contrary, we are entitled to presume that by some arrangement not disclosed, between the defendant and the corporation, the defendant acquired ownership of this stock or caused the corporation to issue it directly to the plaintiff, which enabled the defendant to perform his agreement of sale by delivering the stock for which, as the complaint alleges, the full consideration of $2,000 was paid to him. What disposition the defendant made of the $2,000 is not disclosed by the complaint, and we are justified in supposing that he appropriated it to his own use. Public policy does not prevent one from making a valid agreement to sell or dispose of property which he does not own at the time. We construe this complaint as stating a valid contract between these parties, whereby the plaintiff agreed to buy, and the defendant, its owner, agreed to sell, and, upon the specified contingency, to repurchase, stock of a corporation, a certificate for which stock was afterwards delivered by the defendant to the plaintiff and accepted by the latter, and which defendant

refused to repurchase, as he orally agreed to do, in compliance with, and as part of, the agreement of sale. The complaint further shows that, in compliance with the oral agreement, the plaintiff assisted in selling stock of the corporation to other persons. The provision for repurchase by the defendant was a part of the one and entire contract, namely, for the sale and repurchase of the stock, each object being a consideration for the other. In *Mulford v. Torrey Exploration Co.*, 45 Colo. 81, (100 Pac. 596) this Court, at page 90, in speaking of a contract of this nature between an individual and the general manager, for and in behalf of an existing corporation, so held. The same rule of construction is applicable to the contract before us, which is between two individuals. The contract here involved is not, in this particular, different from the contract in the Mulford Case. There are not two contracts, one between the plaintiff and the proposed, but then nonexisting corporation, for the sale of the stock; the other an independent and collateral agreement between the plaintiff and the defendant for a repurchase of the same stock. If the contract in the Mulford Case was not within the statute of frauds, the contract in the instant case is not. Our construction is that the defendant, although he agreed to sell stock which he did not own at the time the contract of sale was made, in law did own it at the time that he delivered the stock to the plaintiff and received payment for it. The case of *Johnston v. Trask*, 116 N. Y. 136, 22 N. E. 377, 5 L. R. A. 630, 15 Am. St. Rep. 394, cited with approval by this Court in the Mulford Case, we think is authority for our conclusion.

The author of the article on the statute of frauds in 27 C. J. p. 237, § 253, says that where an agreement for repurchase is made by a person other than the owner of the goods, or where such an agreement is not a term in the original contract of sale, but a collateral agreement made to induce the buyer to purchase, it is within the statute of frauds. An examination of the cases cited in support of this latter proposition may, or may not, fully bear out the

summary of the doctrine made by the author. However that may be, and we are not called upon for an expression of opinion, we think a fair construction of this contract, as stated by the complaint, is that the defendant, though he agreed to sell stock that he did not own, became the owner thereof by subsequently obtaining it from the corporation which issued it, and delivered it to the plaintiff and received the consideration therefor. In other words, this complaint brings the case, as made, within the rule laid down in the Mulford Case, *supra*. It is fitting again to state that, in the contract we are considering, the plaintiff was to buy stock, was to help in selling stock to others, and was to pay for the stock, and he had done all these things. The defendant was to perform two conditions, to lend, or cause to be lent, money to the plaintiff, through the Weldon Bank, with which to purchase the stock. Defendant complied therewith. In the second place he was to take the stock off the plaintiff's hands, at the latter's request, which he declined to do. The plaintiff, having complied with all the conditions of the contract of purchase, and the defendant having done one of the two things he promised, but refusing to repurchase the stock, we conclude that he was obliged to do that, because there was but one entire contract of the parties, the essential element of which was the purchase of the stock by plaintiff, and the repurchase by defendant, each of which was the consideration for the other. *Green v. Brookins*, 23 Mich. 48, 9 Am. Rep. 74; *Gurwell v. Morris*, 2 Cal. App. 451, 83 Pac. 578; *Clement v. Rowe*, 33 S. D. 499, 146 N. W. 700, are in line with our decision.

2. If, however, the defendant did not, at the time of the oral agreement, own the stock, or did not become such owner when he delivered it and received payment, still, under a line of respectable authorities, the contract is to be regarded as in the nature of one of indemnity, and not for the purchase of stock from the defendant, and, therefore, even though the agreement was oral, it was not in violation of our statute of frauds, which is restricted to the sale of

goods. In. *Trenholm v. Kloepper*, 88 Neb. 236, 129 N. W. 436, the defendant seller, the court said, could not escape the consequences of his undertaking to repurchase, because he did not own the stock purchased, citing several cases. To the same effect is *Lingelbach v. Luckenbach,* 168 Wis. 481, 170 N. W. 711, 14 A. L. R. 380. See also *Cooper v. Huerth,* 156 Wis. 346, 146 N. W. 485, and *Schaefer v. Strieder,* 203 Mass. 467, 89 N. E. 618. In the last case the defendant induced the plaintiff to invest in stock of a corporation upon defendant's promise that if the plaintiff became dissatisfied, or wanted his money at any time, he could have it. Although the note and the checks which the plaintiff gave for the stock were payable to the corporation, the court said that, inasmuch as the defendant was, more or less, interested in the corporation, the jury well might have believed from his conduct and his relations to the company, which appeared in evidence, that the stock belonged to him and that he was the principal in the whole transaction. If such were the case the jury would be justified in finding that the contract was for a qualified sale of the stock, which was revocable by the plaintiff upon the conditions stated, so that he might at any time, under the agreement, have his money back and return his stock. The court said that such an agreement would not be a contract for the sale of property within the purview of the statute of frauds. The court further said that if the sale of stock was one by the corporation, through its agent, the jury might still find that the contract was only for a qualified sale, and that plaintiff had a right to rescind or set aside the sale and have back his money. That case is quite like the one before us, in that here the defendant was an organizer and promoter of the corporation, and as the promoter, was individually liable to purchasers of the stock for any wrongs or frauds that he might perpetrate upon them in selling stock, even if he did not at the time own it. From the allegations in this complaint the court might infer the defendant's interest in the proposed corporation. The fact that the purchase price of the stock was paid by the

plaintiff to, and the same was accepted by, the defendant, and it not appearing that the consideration ever passed to the corporation which issued the stock are additional grounds indicating defendant's ownership. As we have found that the complaint states a cause of action, first, because the defendant was, in law, the owner of this stock and received the purchase price, and, second, because the contract might be considered as one in the nature of an indemnity contract, and, therefore, not within the statute of frauds, we are not called upon to inquire whether the plaintiff is estopped in equity from relying upon the statute as a bar to the action..

The judgment must be reversed and the cause remanded with instructions that such further proceedings as may be had shall not be inconsistent with the views herein expressed.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE SHEAFOR concur.